## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLISON ALT** | * |
| **1400 Irving Street, NW, Apt. 628** | |
| **Washington, DC 20010** | * |
| | |
| **Plaintiff** | * |
| | **Civil Action No. 1:17-cv-01897** |
| **v.** | * |
| | |
| **HCC LIFE INSURANCE COMPANY** | * |
| **225 Tower Park Drive, Suite 350** | |
| **Kennesaw, GA 30144** | * |
| | |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### NOTICE OF REMOVAL

COMES NOW, Defendant HCC Life Insurance Company ("HCC"), by and through undersigned counsel and, pursuant to 28 U.S.C. § 1332, 1441, and 1446, files this Notice of Removal from the Superior Court of the District of Columbia nad in support thereof states as follows:

1.      On June 19, 2017, Plaintiff Allison Alt filed an action against HCC in the Superior Court of the District of Columbia styled as *Allison Alt v. HCC Life Insurance Company*, 2017 CA 004196 B ("State Court Action"). A copy of the Complaint from the State Court action is attached hereto as Exhibit A.

2.      A copy of the Complaint in the State Court Action, along with the Summons was served upon HCC's registered agent on August 15, 2017. A copy of the Summons is attached hereto as Exhibit B.

3.      This Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

4.      Defendant will give written notice to Plaintiff and the Clerk of Court for the Superior Court of the District of Columbia promptly after filing this Notice of Removal, as required by 28 U.S.C. § 1446(d).

## GROUNDS FOR REMOVAL

5.      This action arises out of an alleged breach of contract and violation of the Consumer Protection Act arising from HCC's denial of Plaintiff's health insurance claim.

6.      Plaintiff is a resident of the District of Columbia.

7.      HCC is incorporated in Indiana with its principal place of business in Georgia.

8.      In Count I of the State Court Action, Plaintiff seeks no less than $85,000 plus costs and interest.

9.      Pursuant to 28 U.S.C. § 1332(a), the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different States. The State Court Action meets the requirements of original jurisdiction on its face.

10.     28 U.S.C. § 1441(a) provides that any civil action brought in a State court of which the district courts have original jurisdiction may be removed by the defendant to the district court for the district and division embracing the place where such action is pending.

11.     This district embraces the Superior Court of the District of Columbia, where the State Court Action is currently pending.

WHEREFORE, for the foregoing reasons, Defendant HCC Life Insurance Company requests that the State Court Action be removed to this Court from the Superior Court for the District of Columbia and for such other and further relief as this Court deems appropriate.

_____
/s/
Charles B. Peoples, Esquire, #1011169
Thomas, Thomas & Hafer, LLP
1025 Connecticut Ave., NW, Suite 608
Washington, DC 20036
202-945-9501
202-945-9509 (fax)
cpeoples@tthlaw.com
*Attorney Defendant*

## CERTIFICATE OF SERVICE

I DO HEREBY AFFIRM that, on the 14th day of September, 2017, a copy of the

foregoing Notice of Removal was served on the following:

Zach Miller, Esquire
Dirk McClanahan, Esquire
Mclanahan Powers, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
*Attorneys for Plaintiff*

_____/s/_____
Charles B. Peoples, Esquire #1011169
*Attorney for Defendant*

Filed
D.C. Superior Court
06/13/2017 10:59BM
Clerk of the Court

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLISON ALT**<br>1400 Irving Street, NW, Apt. 628<br>Washington, DC 20010<br><br>Plaintiff,<br><br>v.<br><br>**HCC LIFE INSURANCE COMPANY**<br>225 Town Park Drive<br>Suite 350<br>Kennesaw, GA 30144<br><br>Please serve: National Registered Agents, Inc.<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060<br><br>Defendant(s). | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: Case No.: __2017 CA 004196 B__<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### COMPLAINT

COMES NOW, the Plaintiff, Allison Alt ("Alt" or "Plaintiff"), by counsel, and moves this Honorable Court for judgment against Defendant, HCC Life Insurance Company ("HCC" or "Defendant"), on the grounds and praying for the relief hereinafter set forth:

### PARTIES

1.  Plaintiff is an individual domiciled and residing in Washington, DC.

2.  Upon information and belief, HCC is a corporation organized under the laws of the State of Indiana with its principal place of business located in Georgia.

### JURISDICTION AND VENUE

3.  The Policy, defined below, contains a choice of law provision for the District of Columbia.

4.  This Court has subject matter jurisdiction over all claims pursuant to D.C. Code § 11-921.

5.  This Court has personal jurisdiction over the Defendant, as the Defendant regularly conducts



EXHIBIT
A

business in the District of Columbia.

6.      Venue is proper in this Court because a substantial part of the events, acts or omissions giving rise to Plaintiff's causes of actions and claims for relief occurred in the District of Columbia.

## STATEMENT OF FACTS

7.      On or around March 2016, Alt purchased short term medical insurance coverage from HCC. A copy of the policy (the "Policy") is attached hereto as **Exhibit A**.

8.      Plaintiff paid all premiums in order to insure such medical coverage.

9.      Prior to obtaining this coverage, Alt did not have any pre-existing condition with respect to any back or leg injuries. Likewise, Alt did not have any record of any pre-existing condition.

10.     While Alt was moving heavy boxes and personal items during her relocation from the District of Columbia to Texas, she caused a slight injury to her back.

11.     Subsequently, Alt went to see a chiropractor regarding the injury.

12.     After receiving an adjustment from her chiropractor, Alt experienced excruciating pain, which worsened until she was unable to walk and brought into the emergency room on a stretcher.

13.     Ultimately, Alt was diagnosed as having suffered a very large L4-5 disc herniation and compression causing severe canal stenosis.

14.     The injury led to the inability to walk and conduct day-to-day functions, and caused Alt to experience severe pain and suffering.

15.     As a result of the injury, Alt was advised by Dr. Vikram Nayar to have surgery as soon as possible and subsequently underwent surgery at MedStar Georgetown University Hospital.

16.     The surgery was preauthorized by HCC.

2

17.    After undergoing this surgery and associated procedures, Alt incurred substantial medical

bills.

18.    However, coverage under the Policy was denied by Defendant, and it refused to provide

payment for any of Alt's medical treatment.

19.    The primary reason cited for this denial was the purported existence of pre-existing

medical conditions.

20.    Defendant denied coverage for the following claims:

| Claim # | Provider & Date of Service | Amount |
|---------|---------------------------|--------|
| 216-0000329271-00  (Duplicated as 216-0000315220-00 and 216-0000230441-00) | Claire Rosche-Matz  6/22/2016 | $408.00 |
| 216-0000287729-00 | Georgetown University Hospital 6/24/16 | $68,449.26 |
| 216-0000280147-00 | Stephen Young 8/25/16 | $89 |
| 216-0000255470-00 | Ann Jay  6/24/16 | $166.00 |
| 216-0000255468-00 | Vikram Nayar 6/29/16 | $5,615.00 |
| 216-0000255185-00 | Janice Jeon 6/25/16 | $41 |
| 216-0000255176-00 | Mary Cormier 6/30/16 | $32 |
| 216-0000249536-00 | Vikram Nayar 6/25/16 | $713 |
| 216-0000242606-00 | Vikram Nayar 6/29/16 | $5,615 |
| 216-0000242202-00 | Curtis Henn 7/1/16 | $237 |
| 216-0000239929 | Edward Pien 6/29/16 | $96 |
| 216-0000235481-00 | Leisl Curtis 6/24/16 | $389 |

| 216-0000230447 | Claire Rosche-Matz 6/22/16 | $16.23 |
|---|---|---|
| *Invoice #12495817 (This number was provided by Georgetown Hospital via phone) | Jason Hoffling 6/29/16 | $2,945 |

21.     Following this denial, Plaintiff filed an appeal with Defendant requesting it reconsider its denial. This appeal was also denied.

22.     Despite its duties and responsibilities under the Policy, HCC has refused to provide any payment or coverage for the medical expenses associated with Alt's injury.

23.     As a result, HCC has materially breached the terms of the Policy.

24.     At all times, Plaintiff fulfilled all of her obligations under the terms of the Policy.

## STATEMENT OF CLAIMS

## COUNT I - BREACH OF CONTRACT

25.     The Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above.

26.     Under the terms of the Policy, HCC agreed to provide coverage for medical expenses incurred by Plaintiff.

27.     Despite Plaintiff's medical treatment and request for coverage, Defendant has failed to provide coverage or payment for such expenses.

28.     As a result, HCC has materially breached the terms of the Policy.

29.     Plaintiff fully performed all obligations under the Policy.

30.     In denying such claims, Defendant also breached the covenant of good faith and fair dealing as there exists no legitimate basis, at all, for denial of Plaintiff's claims.

4

31.    In denying the claims, Defendant acted vexatiously, wantonly, in bad faith and for oppressive reasons that justify the imposition of attorneys' fees.

32.    As a direct, foreseeable, and proximate result of Defendant's breach, Plaintiff has suffered damages in an amount no less than $85,000.00, plus court costs, attorneys' fees and interest.

### COUNT II – VIOLATION OF THE CONSUMER PROTECTION ACT

33.    The Plaintiff restates, re-pleads, and incorporates by reference each and every allegation set forth above.

34.    Defendant misrepresented numerous facts about the Policy, advertised coverage it did not intend to provide, and charged premiums for illusory insurance.

35.    Specifically, Defendant has violated D.C. Code Ann. § 28-3904, including sections (e), (e-1), and (f).

36.    The Policy includes certain exemptions of coverage, including "[j]oint replacement or other treatment of joints, spine, bones or connective tissue including tendons, ligaments and cartilage, unless related to a covered Injury."

37.    As stated herein, Plaintiff had no preexisting conditions and suffered a sudden and accidental injury in June 2016.

38.    Such an accident was a covered injury under the terms of the Policy.

39.    By denying coverage, Defendant misrepresented or failed to state the nature of injuries actually covered by the Policy.

40.    Likewise, if such injuries are not covered then the Policy simply presents an illusory promise that does not cover any injuries.

41.    Plaintiff relied on these material misrepresentations in tendering payment to Defendant.

42.    Defendant thus acted under circumstances amounting to a reckless, willful, and wanton disregard of Plaintiff's right and justifies the impositions of treble damages and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this honorable Court:

A. Enter judgment for Plaintiff and against Defendant with pre and post judgment interest;

B. Award Plaintiff treble damages, costs, and its attorneys' fees; and

C. Order such further relief that this Court deems just and reasonable.


Respectfully submitted,


By Counsel:


/s/ Zach Miller
Zach Miller (DC Bar No.  1023148)
Dirk McClanahan (DC Bar No. 1019009)
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email: zmiller@mcplegal.com
*Counsel for Plaintiff*

6

From: HCC Life STM
Sent: Sunday, March 20, 2016 11:16:29 AM (UTC-08:00) Pacific Time (US & Canada)
To: supervisor
Subject: HCC Life STM order

Mar 20, 2016

Dear Agent,

Your client, Allison Alt, has purchased HCC Life STM. Attached to this message you will find a copy of the policy documents that the Insured received. Application details are:

Certificate #: DC16000243

Primary Policyholder's Date of Birth: ████████

Primary Name: Allison Alt
Dependent Names (as applicable):

Coverage for the above individual(s) is as follows:

Overall Maximum Limit: $2,000,000

Deductible: $2,500

Coinsurance: 80/20

Effective Date: 4/1/2016

Fulfillment: Online

Payment Option: Monthly

Coverage Length: 6 Months

Policy Premium: $54.21

Total Cost: $59.21

Client Email: allisonclairealt@gmail.com

Agent: 23723

If you have any questions, please feel free to contact us.

Thank you,

Underwriting Department

HCC Life Insurance Company

---

Mail Attachment

*Allison Alt*
*146 U Street NW*
*Washington, DC  20001*

 HCC Life Insurance Company

# Short-Term Medical

STM ADMINISTERED BY HCC MEDICAL INSURANCE SERVICES

**THANK YOU** for your purchase of HCC Life Insurance Company's Short Term Medical coverage. Please review your coverage and application carefully. A few important reminders regarding your coverage are outlined below:

The insurance contains the lifetime maximum, co-insurance and deductible amounts that you selected at the time of application. The coverage contains exclusions for specific conditions and treatments as well as a pre-existing condition exclusion. The insurance does not pay for routine physicals or immunizations unless required by state law. In addition, hernia operations, gall bladder removal and other selected surgical procedures are not covered for the first 6 months the coverage is in force. HCC Life Insurance Company, in no event, will provide benefits in excess of those specified in the insurance contract. This insurance is not subject to guaranteed issuance or renewal.

**Contact Us**
service@hccmis.com
Phone: 1-866-400-7102 / 317-221-8095
Fax: 317-262-2140

Call Center hours are Monday-Friday from 7am-Midnight EST

**Client Zone**
https://zone.hccmis.com/clientzone
• Update your information
• Reprint an ID card
• Change Mailing and Email addresses
• View product brochures



**Pre-Existing Conditions:**
• Charges resulting directly or indirectly from any pre-existing condition are excluded from this insurance.
• If you had an illness, and injury or condition at the time of purchase that you intended to have covered under this insurance, it will likely not be covered and you should consider using the free look provision.
• Please refer to the limits set forth in your Short Term Medical insurance provided at the time of purchase.



**Important:**
HCC Life's Short Term Medical Insurance Services is not subject to the Patient Protection and Affordable Care Act (PPACA). It does not contain many of the coverages required by PPACA. Depending on the time of year and individual circumstances, you can purchase PPACA compliant individual health insurance plans from your state's Health Insurance Marketplace.



**Free Look Provision:**
• Your insurance contract contains a free look period which allows you to cancel the coverage for any reason.
• All requests must be in writing and must be received by HCC Life within 10 days of the effective date of coverage. All cancellation requests should be sent to orders@hccmis.com

Note – Indiana contracts have a 30 day free look period.



**Cancellations (after Free Look period):**
• Should you wish to cancel, please send a request to orders@hccmis.com *Note - the request must include your policy number and needs to come from the email address on file used to purchase the policy.
• If paying by monthly installments, a request needs to be submitted prior to your next installment date.
• Single up-front payments require proof of other insurance (with effective date) before a cancellation request can be processed.



**Getting Medical Treatment:**
• Show your ID card to the medical attendant.
• Pay the deductible or copay (if applicable).
• The medical office may submit bills directly to us.

After the visit, you will need to submit a Claimant's Statement.



**Filing a Medical Claim:**
• Submit original, itemized bills, and any payment receipts, and claim form service.hccmis.com
• A copy of a Claims Statement can be obtained by clicking: http://www.hccmis.com/downloads

## Payment Receipt

For Certificate: *DC16000243*
Paid By:      *Allison Alt*
Payment Type: *VISA*
Number:       *xxxxxxxxxxxxx*
Amount:       *$59.21*
Date Paid:    *3/20/2016*

Credit Card Payments Only
Expiration Date: *6/17*
Trans. Code:   *1378989214*
Auth. Code:    *05065A*





**Discount Pharmacy & Medical Savings Card**
*ALSO DENTAL & IMAGING DISCOUNTS & MORE!*



## Save Money with your *FREE* Prescription Discount Card

### Includes most prescription drugs

Your nationally recognized VantageAmerica Solutions Discount Pharmacy Card provides discounts on most FDA approved prescription drugs. There are no limited drug lists, no waiting periods and your card is active the moment you present it to the pharmacy.

### Significant Savings

Savings average from 5%-15% off the cash price for brand drugs and average 15%-40% off the price of generic drugs. In the event a pharmacy's price is lower than our discounted price, you will always receive the lowest price available.

### Use at almost any Pharmacy

Your VantageAmerica Solutions Discount Pharmacy Card is widely accepted at over 54,000 participating pharmacies across the United States, including most national and regional chains, pharmacy associations, and many local community pharmacies. If your community pharmacy is not enrolled, ask them to contact member services at 1-800-974-3454. We always welcome new participation.

### Everyone can Save

This program applies to your entire family. Everyone deserves to save. All family members and friends are eligible for this program. Please present your card every time you need to fill a prescription to receive instant savings. There are absolutely no restrictions.

**Pharmacy discounts are NOT insurance and are NOT intended as a substitute for insurance. The discount is only available at participating pharmacies.**

For your convenience, we have already activated your card and your savings will begin immediately. Please detach card below and present to your local pharmacy.

ADHV8-12-04                                    R1/2016

## Easy to Use!

Just present the attached card at a participating pharmacy the next time you or family members need to fill a prescription. You will also realize immediate savings of 25%-80% on MRI and CT scans and 5%-30% on Diabetic Supplies. Additionally, you can save 10%-35% on Dental Care, and 15% on Hearing Equipment. Simply call the numbers on your card or visit the websites provided. Or, if you have questions or need assistance of any kind, call the Member Service Center at 1-800-975-3322 between the hours of 8:00 am and 5:00 pm (CST). One of our representatives will be happy to help you get the most from your complimentary VantageAmerica Solutions Discount Pharmacy Card.

**Card NOT Valid in AK, MA, MN, MT, VT, and Canada.**

*Disclosures:*

a. The discount medical card program is NOT health insurance.

b. The plan provides discounts at certain health care providers for medical services.

c. The plan does not make payments directly to the providers of medical services.

d. The range of discounts for medical or ancillary services provided under the plan will vary depending on the type of provider and medical or ancillary services received.

e. The plan member is obligated to pay for all health care services but will receive a discount from those health care providers who have contracted with VantageAmerica Solutions, Inc., a discount medical plan organization.

*Managed and Administered by:*



VantageAmerica Solutions, Inc.
1275 Milwaukee Avenue
Glenview, IL 60025
www.vantageamericasolutions.com
*This discount plan is not a qualified health plan under the Affordable Care Act.*

---



Member ID: HCCMIS4575
Group ID: HCCMIS4110
BIN: 610210
RXPCN: PRX

PARAMOUNT Rx

*Valid for entire family*

**Pharmacist Help Desk: 1-800-481-0605**
Void where Prohibited by Law   Process all transactions electronically
**THIS IS NOT INSURANCE... DISCOUNT ONLY**
ADHV9-12-04                                    R1/2016

## To find a provider, refer below.

PARAMOUNT Rx
http://lookuprx.net
**Pharmacy**
**1-800-974-3454**

Galaxy Health Network
Group Code: GALAXY
**Imaging**
**1-877-814-2461**

Beltone
www.Beltone.com
Reference # MC 60210
**Hearing**
**1-800-235-6683**

UNI-CARE
http://www.lookuptopdents.net
Group VAS354105
**Dental**
**1-800-308-0374**

Prestige Diabetic Program
http://vantagediabeticplan.com
**Diabetic Supply**
**1-888-918-3782**

PAYMENT MUST BE MADE AT SCHEDULING OR TIME OF SERVICE

**THIS IS NOT INSURANCE!**

**HCC LIFE INSURANCE COMPANY**
225 TownPark Drive, Suite 350
Kennesaw, Georgia 30144
866-400-7102

### SHORT TERM MAJOR MEDICAL INSURANCE POLICY

HCC Life Insurance Company (hereinafter the Company, We, Our, or Us) agrees to pay the insurance benefits herein provided, subject to the terms and conditions of this policy. Benefits are payable in United States Dollars only.

This policy is issued to the Policyholder (hereinafter the Insured, You or Your) in consideration of the application and payment of premiums, to take effect as of the Effective Date. This policy will terminate as hereinafter provided.

The first premium is due on or before the Effective Date and future premiums are due as stated herein during the continuance of this policy.

All periods indicated herein begin and end at 12:01 A.M. Standard Time at the address of the Policyholder.

This policy is delivered in and is governed by the laws of the District of Columbia.

The benefits and provisions set forth on the following pages, riders or endorsements are a part of this policy as if recited over the parties' signatures.

Signed for HCC Life Insurance Company.

_____
President

_____
Corporate Secretary

## LIMITED BENEFIT SHORT TERM MEDICAL INSURANCE
## NON-RENEWABLE POLICY
## PLEASE READ CAREFULLY

**THIS POLICY IS A CONTRACT
BETWEEN THE POLICY HOLDER AND THE COMPANY
READ IT CAREFULLY**

For service or complaints about this policy, please address any inquiries to the address shown above or call 866-400-7102.

HCCL STMM IND DC

## TABLE OF CONTENTS

PART I    GENERAL DEFINITIONS ..................................................................Page 3

PART II   ELIGIBILITY AND EFFECTIVE DATE OF INSURANCE......................Page 7

PART III   TERMINATION OF INSURANCE................................................. Page 8

PART IV   PREMIUMS ...............................................................................Page 10

PART V   DESCRIPTION OF MEDICAL EXPENSES .........................................Page 11

PART VI   EXCLUSIONS .............................................................................Page 14

PART VII  COORDINATION OF BENEFITS....................................................Page 17

PART VIII CLAIM PROVISIONS ...........................................................Page 20

PART IX   GENERAL PROVISIONS ..............................................................Page 22

PART X   SCHEDULE OF BENEFITS...............................................................Page 23

**NOTE: NO CONTINUOUS COVERAGE.** This policy of insurance provides coverage for a short term duration only. It is not renewable.

Although this short term plan may be rewritten for new and completely separate Coverage Periods (as long as you meet the eligibility criteria described in the application), coverage does not continue from one policy to another. This means that a new application must be submitted, a new effective date is given, a new pre-existing condition exclusion period begins and a new deductible and out-of-pocket expense must be met. Any medical condition which may have occurred and/or existed under a prior policy will be treated as a pre-existing condition under the new policy.

HCCL STMM IND DC

## PART I – GENERAL DEFINITIONS

"Accident" means a sudden, unforeseeable event that causes injury to one or more Covered Persons.

"Complications of Pregnancy" means:
1. Conditions requiring inpatient treatment (when pregnancy is not terminated);
2. Whose diagnoses are distinct from pregnancy but are adversely affected or caused by pregnancy, such as hyperemesis gravidarum, preeclampsia, acute nephritis, nephrosis, cardiac decompensation, missed abortion and similar medical and surgical conditions of comparable severity, but shall not include false labor, occasional spotting, Doctor prescribed rest during the period of pregnancy, morning sickness, and other similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy; and
3. Non-scheduled or emergency cesarean section, ectopic pregnancy that is terminated, and spontaneous termination of pregnancy that occurs during a period of gestation in which a viable birth is not possible.

"Congenital Condition" means a disease or other anomaly existing at or before birth, whether acquired during development or by heredity.

"Coverage Period" means the length of time which the Insured selected in the Insured's application and approved by us, not to exceed a/an six (6)    month period commencing on the Effective Date. The Insured's Coverage Period is shown in the Schedule of Benefits.

"Covered Person" means an Insured and his eligible dependents for whom coverage is in effect under this policy, as described in Part II – Eligibility and Effective Date of Insurance Provisions and the Schedule of Benefits.

"Custodial or Convalescence Care" means any care that is provided to a Covered Person who is disabled and needs help to support the essential activities of daily living when the Covered Person is not under active and specific medical, surgical, or psychiatric treatment that will reduce the disability to the extent necessary for the person to perform the essentials of daily living on his own.

"Deductible" means the amount of covered expenses that must be paid by a Covered Person before benefits are payable under this policy. This amount applies separately to each Covered Person and must be satisfied as stated in the Schedule of Benefits.

"Doctor" means any duly licensed practitioner who is recognized by the law of the state in which treatment is received as qualified to perform the service for which claim is made.

"Eligible Dependent" means:
1. The Insured's lawful spouse under age 65; and
2. The Insured's unmarried children who are less than age 19. An unmarried child who is less than age 25 may also be included if the child is enrolled full-time in an accredited school or college.

Dependent children may include stepchildren, foster children, legally adopted children, children of adopting parents pending finalization of adoption procedures, and children for whom

coverage has been court-ordered. Dependent children may also include a grandchild, niece or nephew who otherwise qualifies as a dependent child, if:
1.    The child is under the primary care of the Insured; and
2.    The legal guardian of the child, if other than the Insured, is not covered by an accident or sickness policy. The term "primary care" means that the Insured provides food, clothing and shelter on a regular and continuous basis during the time that the District of Columbia public schools are in regular session.

Dependent children (other than those for whom coverage has been court-ordered) must be primarily dependent on the Insured for principal support and maintenance.

"Durable Medical Equipment" means medical equipment that can withstand repeated use, is prescribed by a Doctor, and is appropriate for use in the home. Covered DME is limited to a standard basic Hospital bed and/or a standard basic wheel chair.

"Effective Date" means the date the Insured's (and Eligible Dependents' if applicable) coverage under this policy is effective.

"Experimental Treatment" means in Our discretion a treatment, drug, device, procedure, supply or service and related services (or any portion thereof, including the form, administration or dosage) for a particular diagnosis or condition when any one of the following exists:
1.    The treatment, drug, device, procedure, supply or service is in any clinical trial or a Phase I, II or III trial.
2.    The treatment, drug, device, procedure, supply or service is not yet fully approved or recognized (for other than experimental, investigational, research or clinical trial purposes) by the National Cancer Institute (NCI), Food & Drug Administration (FDA), or other pertinent governmental agency or professional organization.
3.    The results are not proven through controlled clinical trials with results published in peer-reviewed English language medical journals, to be of greater safety and efficacy than conventional treatment, in both the short and long term.
4.    The treatment, drug, device, procedure, supply or service is not generally accepted medical practice in the state where the Covered Person resides or as generally accepted throughout the United States as determined in Our discretion, by reference to any one or more of the following:  peer-reviewed English-language medical literature, consultation with Doctors, authoritative medical compendia, the American Medical Association, or other pertinent professional organization or governmental agency.
5.    The treatment, drug, device, procedure, supply or service is described as investigational, experimental, a study, or for research or the like in any consent, release or authorization which the Covered Person, or someone acting on his or her behalf, may be required to sign.
The fact that a procedure, service, supply, treatment, drug, or device may be the only hope for survival will not change the fact that it is otherwise experimental in nature.

"Extended Care Facility" means an institution, other than a Hospital, operated and licensed pursuant to law, that provides:
1.    Permanent and full-time facilities for the continuous skilled nursing care of three (3) or more sick or injured persons on an Inpatient basis during the convalescent stage of their illnesses or injuries;
2.    Full-time supervision of a Doctor;
3.    Twenty-four (24) hour a day nursing service of one or more Nurses; and

4.      Is not, other than incidentally, a rest home or a home for custodial care or for the aged. Extended Care Facility does not include an institution that primarily engages in the care and treatment of drug addiction or alcoholism.

"Home Health Care Agency" means an entity licensed by state or local law operated primarily to provide skilled nursing care and therapeutic services in an individual's home and:
1.      Which maintains clinical records on each patient;
2.      Whose services are under the supervision of a Doctor or a licensed graduate registered nurse (RN); and
3.      Which maintains operational policies established by a professional group including at least one Doctor and one licensed graduate registered nurse (RN).

"Home Health Care Plan" means a program for continued care and treatment of an individual established and approved in writing by the individual's attending Doctor. As part of the plan, an attending Doctor must certify that proper treatment of the Injury or Sickness would require continued confinement in a Hospital in the absence of the services and supplies.

"Hospital" means an institution operated by law for the care and treatment of injured or sick persons; has organized facilities for diagnosis and surgery or has a contract with another hospital for these services; and has 24-hour nursing service. Hospital excludes any institution that is primarily a rest home, nursing home, convalescent home, a home for the aged, an alcoholism or drug addiction treatment facility, or a facility for treatment of mental disorders.

"Immediate Family" means the parents, spouse or similar relationship recognized by law, children, or siblings of a Covered Person, or any person residing with a Covered Person.

"Incident" means all Sicknesses that exist simultaneously and which are due to the same or related causes are considered to be one Incident. Further, if a Sickness is due to causes which are the same as or related to the causes of a prior Sickness, the Sickness will be deemed to be a continuation of the prior Sickness and not a separate Incident. All Injuries due to the same Accident shall be deemed to be one Incident.

"Injury" means accidental bodily Injury of a Covered Person:
1.      Caused by an Accident; and
2.      That results in covered loss directly and independently of all other causes.

All Injuries sustained in one Accident, including all related conditions and recurring symptoms of the Injuries, will be considered one injury.

"Inpatient" means a person who incurs medical expenses for at least one day's room and board from a Hospital.

"Insured" means a person who meets the eligibility requirements for an Insured in the Application and this policy, and whose coverage under this policy has become effective and has not terminated.

"Medically Necessary" means the care, service or supply is:
1.      Prescribed by a Doctor for the diagnosis or treatment of an Injury or Sickness; and
2.      Appropriate, according to conventional medical practice for the Injury or Sickness in the locality in which the care, service or supply, is given.

The fact that a Doctor may prescribe, authorize or direct a service does not of itself make it Medically Necessary or covered by this Policy.

"Mental and Nervous Disorder" means a "biologically-based" mental disorder, including Schizophrenia, Schizoaffective disorder, Major depressive disorder, Bipolar disorder, Paranoia and other psychotic disorders, Obsessive-compulsive disorder, Panic disorder, Delirium and dementia, Affective disorders, and any other "biologically-based" mental disorders appearing in the most recent edition of the Diagnostic and Statistical Manual of the American Psychiatric Association (the "DSM").

"Outpatient" means a person who incurs medical expenses at Doctor's offices and freestanding clinics, and at Hospitals when not admitted as an Inpatient.

"Regular and Customary Activities" means an Insured Person can carry on a substantial part of the standard and commonly practiced activities of a person in good health of the same sex and age. Activities performed while confined in a Hospital or other medical institution may not be used to meet this requirement.

"Routine Physical Exam" means examination of the physical body by a Doctor for preventive or informative purposes only, and not for the diagnosis or treatment of any condition.

"Sickness" means Sickness or disease of a Covered Person that:
1.    Is treated by a Doctor while the person is covered under this policy; and
2.    Results directly and independently of all other causes in loss covered by this policy.

"Substance Abuse" means the overindulgence in and dependence on a psychoactive leading to effects that are detrimental to the individual's physical health or mental health, or the welfare of others.

"Surgery or Surgical Procedure" means an invasive diagnostic procedure; or the treatment of Injury or Sickness by manual or instrumental operations performed by a Doctor while the patient is under general or local anesthesia.

"Total Disability" (or "Totally Disabled") means the Insured is disabled and prevented from performing the material and substantial duties of his or her occupation. For Dependents, "Totally Disabled" means the inability to perform a majority of the normal activities of a person of like age in good health.

"Urgent Care Center" means a medical facility separate from a hospital emergency department where ambulatory patients can be treated on a walk-in basis without an appointment and receive immediate, non-routine urgent care for an Injury or Sickness presented on an episodic basis.

"Usual and Customary" charges means the following:
1.    A usual fee is defined as the charge made for a given service by a Doctor to the majority of his or her patients; and
2.    A customary fee is one that is charged by the majority of Doctors within a community for the same services. All benefits are limited to Usual and Customary charges.

## PART II – ELIGIBILITY AND EFFECTIVE DATE OF INSURANCE

An Insured must meet the following eligibility requirements:
1.	Must be at least age 2 and under age 65;
2.	Must not be pregnant, an expectant father, or planning on adopting;
3.	Must not be covered under other hospital, major medical, group health or other medical insurance coverage;
4.	Must not be a member of the armed forces of any country, state or international organization, other than on reserve duty for 30 days or less; and
5.	Must submit an Application, and if required, provide satisfactory evidence of insurability to the Company.

The Insured's Dependents may apply for coverage under the Policy, if each such person:
1.	Qualifies as an Eligible Dependent as defined in this Policy;
2.	Is not pregnant, an expectant father, or planning on adopting;
3.	Is not covered under other hospital, major medical, group health or other medical insurance coverage;
4.	Is not a member of the armed forces of any country, state or international organization, other than on reserve duty for 30 days or less; and
5.	Submits an Application, and if required, provides satisfactory evidence of insurability to the Company.

Coverage will be effective for an Insured and his Eligible Dependent(s) as of the approved Effective Date, provided:
1.	The Insured and his/her Dependent(s) meets the eligibility requirements set forth in the Application and this policy;
2.	The Insured's Application is approved by Us;
3.	The first premium payment is received on or before the date the Insured's Application is approved by Us;
4.	The Insured is not confined at home or in a Hospital or medical institution as of the Effective date; and
5.	The Insured is engaging in his Regular and Customary Activities as of the Effective date.

If the Insured is not engaged in his Regular and Customary Activities or is confined in a Hospital or medical institution on the Effective Date, coverage will begin the first day he can engage in his Regular and Customary Activities and is not confined in a Hospital or medical institution.

The Company will require satisfactory evidence of insurability for each Insured and Eligible Dependent.

**Newborn Child Coverage:** A child of the Insured born while this policy is in force is covered for Injury and Sickness (including necessary care and treatment of congenital defects, birth abnormality and premature birth), as well as routine newborn care for the first 31 days. The child is covered from the moment of birth until the 31st day of age. A notice of birth together with additional premium must be submitted to us within 31 days of the birth in order to continue coverage for Injury and Sickness beyond the initial 31-day period.

**Adopted Children Coverage:** A minor child who comes under the charge, care and control of the Insured while this policy is in force is covered for Injury and Sickness provided the Insured files a petition to adopt. The coverage of such child will be the same as provided for other members of the Insured's family. Such child shall be covered from the date of placement in the

Insured's home if the Insured applies for coverage and pays any required premium within 31 days after the date of placement. However, coverage shall begin at the moment of birth if the petition for adoption, application for coverage and payment of premium occurs within 31 days after the child's birth. Such child's coverage will not be subject to any pre-existing conditions limitation provided by this policy. Coverage for such minor child will continue unless the petition for adoption is dismissed or denied.

## PART III - TERMINATION OF INSURANCE

Coverage of a Covered Person under this policy shall automatically terminate on the earliest of the following dates:

1.    The date the Coverage Period expires;
2.    The first day of the month coinciding with or following the date other hospital, major medical, group health or other medical insurance coverage becomes effective for a Covered Person;
3.    The end of the last period for which the last required premium payment was made for the Insured's or Covered Person's insurance;
4.    The date a Covered Person receives the Coverage Period Maximum Benefit Amount;
5.    The date the Covered Person enters the armed forces of any country, state or international organization, other than for reserve duty of 30 days or less;
6.    The premium due date that coincides with or next follows the date on which the Insured is no longer eligible;
7.    For a Dependent spouse, the first day of the month following the date of divorce or legal separation from the Insured; or
8.    The date We specify that the Covered Person's insurance is terminated because of:
    A.    Failure to provide any signed release, consent, assignment or other documents requested by Us;
    B.    Failure to fully cooperate with Us in the administration of this policy;
    C.    Material misrepresentation, fraud, or omission of information on any application form, or in requesting the receipt of benefits under this policy; or
    D.    Misuse of the Covered Person's identification card.

At the death of an Insured, all rights and privileges as a Covered Person under this policy will transfer to the surviving Dependent spouse. The Dependent spouse will then be considered an Insured instead of a Dependent. In the event the Dependent spouse remarries, coverage under this policy for the Dependent Spouse and Dependent child(ren), if any, will end on the first day of the month following the date of that marriage. If no surviving Dependent spouse, or at the death of a surviving Dependent spouse, all rights and privileges as a Covered Person under this policy will transfer to each Dependent child, if any, and he will be considered the Insured instead of a Dependent.

If the Insured selected the Pay In Advance option in the Insured's Application, We received all required premium for the Coverage Period, and coverage terminates because other insurance is secured or due to divorce or legal separation, premium will be reimbursed to the Insured for the period of time, if any, between the later of: (1) the date coverage terminates in accordance with the above provisions or (2) the date we are notified of ineligibility, and the end of that Coverage Period.

**Extension of Benefits**

If a covered Bodily Injury or Sickness commences while this policy is in force as to a Covered Person, benefits otherwise payable under this policy for the Injury or Sickness causing the Total Disability will also be paid for any Eligible Expenses incurred after the termination of insurance for a Covered Person if, from the date of such termination to the date such expenses are incurred, the Covered Person is Totally Disabled by reason of such Injury or Sickness. Such benefits shall be payable only during the continuance of such disability until the earlier of:

1.     The date the Total Disability ends;
2.     The date when treatment for the Total Disability is no longer required;
3.     The date following a time period equal to the Covered Person's Coverage Period, with a minimum of thirty (30) days not to exceed a maximum of ninety (90) days;
4.     The date the Covered Person becomes eligible for any other group insurance plan providing coverage for the same conditions causing the Total Disability; or
5.     The date the Coverage Period Maximum Benefit amount has been reached.


## PART IV - PREMIUMS

1.     Unless the Single Payment option has been chosen, premium due dates for an Insured will be on the Effective Date and then the same date of each following calendar month. If a month has fewer days than the scheduled premium due date, premium will be due on the last day of the month. All insurance shall be charged from and to the premium due date.

2.     If any change or clerical error affects premiums, an equitable adjustment in premiums shall be made on the premium due date next following the date of the change or the discovery of the error.   Any premium adjustment that involves collecting earned premiums, or returning unearned premium shall be limited to the six (6) months immediately preceding the date of determination that the adjustment in premium should be made.

3.     Premiums shall be payable in advance to Us at Our Home Office.

4.     If the Insured has not given written notice to Us that insurance is to be terminated prior to the premium due date, a grace period of thirty-one (31) days beginning from the premium due date will be allowed for any premium after the first premium. If the Insured fails to pay premium before the grace period expires all coverage shall lapse as of the premium due date.

5.     This policy does not share in the surplus earnings of the Company and no refund or assessment shall be made to this policyholder, Insured, or Dependent of any excess or deficit earnings of the Company.


**Reinstatement**

If any renewal premium is not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the Policy. Provided, that if the Company or such agent requires

an application for reinstatement and issues a conditional receipt for the premium tendered, the Policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the 45th day following the date of such conditional receipt unless the Company has previously notified the insured in writing of its disapproval of such application.

The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than 10 days after such date. In all other respects the Insured and the Company shall have the same rights as they had under the Policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement shall be applied to a period for which premium has not been previously paid, but not to any period more than 60 days prior to the date of reinstatement.

## PART V – DESCRIPTION OF MEDICAL EXPENSES

Subject to the Deductible, Coinsurance and other limits set forth in PART X – SCHEDULE OF BENEFITS, the Company will pay the following expenses incurred while this insurance is in effect:

1. Charges made by a Hospital for:
   A. Daily room and board and nursing services not to exceed the average semi-private room rate;
   B. Daily room and board and nursing services in Intensive Care Unit;
   C. Use of operating, treatment or recovery room;
   D. Services and supplies which are routinely provided by the Hospital to persons for use while Inpatients;
   E. Emergency treatment of an Injury, even if Hospital confinement is not required; and
   F. Emergency treatment of a Sickness; however, an additional $250 Deductible will apply to emergency room charges unless the Covered Person is directly admitted to the Hospital as an Inpatient for further treatment of that Sickness.
2. For Surgery at an Outpatient surgical facility, including services and supplies.
3. For charges made by a Doctor for professional services, including Surgery. Charges for an assistant surgeon are covered up to 20% of the Usual and Customary charge of the primary surgeon. (Standby availability will not be deemed to be a professional service and therefore is not covered).
4. For dressings, sutures, casts or other supplies which are Medically Necessary and administered by or under the supervision of a Doctor, but excluding nebulizers, oxygen tanks, diabetic supplies, other supplies for use or application at home, and all devices or supplies for repeat use at home, except Durable Medical Equipment as herein defined.
5. For diagnostic testing using radiology, ultrasonographic or laboratory services (psychometric, intelligence, behavioral and educational testing are not included).
6. For artificial limbs, eyes or larynx, breast prosthesis or basic functional artificial limbs, but not the replacement or repair thereof.
7. For reconstructive surgery when the surgery is directly related to surgery which is covered under this policy, including reconstructive breast surgery and prosthetic devices incident to a Mastectomy. Coverage will also be extended to include surgery on a non-diseased breast to establish symmetry with the diseased breast. As used in this benefit:
   A. "Mastectomy" means the surgical removal of all or part of a breast as a result of breast cancer.
   B. "Reconstructive breast surgery" means surgery performed as a result of a mastectomy to reestablish symmetry between the two breasts and includes augmentation mammoplasty, reductive mammoplasty, and mastopexy.
8. For radiation therapy or treatment and chemotherapy.
9. For hemodialysis and the charges by the Hospital for processing and administration of blood or blood components but not the cost of the actual blood or blood components.
10. For oxygen and other gasses and their administration by or under the supervision of a Doctor.
11. For anesthetics and their administration by a Doctor, subject to a maximum of 20% of the benefit payable for the primary surgeon.
12. Extended Care Facility charges for room and board accommodations; if:
   A. The Insured is an Inpatient in that facility on the certification of the attending Doctor that the confinement is Medically Necessary;
   B. The confinement commences immediately following a period of at least three (3) continuous days of Hospital confinement; and

        C.      That confinement is for the same covered Injury or Sickness that was treated during the Covered Person's confinement in the Hospital.

13.      Treatment of a Covered Person by a Home Health Care Agency under a Home Health Care Plan. Up to four (4) consecutive hours in a twenty-four (24) hour period of Home Health Care services shall be considered as one Home Health Care visit.  Eligible Expenses for Home Health Care are the Maximum Allowable Charges made for the following:

        A.      Part-time skilled nursing care;

        B.      Physical therapy;

        C.      Speech therapy;

        D.      Medical supplies, drugs and medicines prescribed by a Doctor;

        E.      Laboratory services by or on behalf of the Hospital but only to the extent benefits for those services would have been paid under this policy had the Insured Person remained Hospitalized;

        F.      Occupational therapy; and

        G.      Respiratory therapy.

However, benefits will not be paid for charges made by a Home Health Care Agency for:

        A.      Any charges excluded under the Exclusions of the policy;

        B.      Full-time nursing care at home;

        C.      Meals delivered to the home;

        D.      Homemaker services;

        E.      Any services of an individual who ordinarily resides in the Insured's home or is a member of the Insured's immediate family; or

        F.      Any transportation services.

Benefits for Home Health Care are in lieu of any similar benefits provided under any other provision of the policy.

14.      Local Ambulance transport necessarily incurred in connection with Injury, and Local Ambulance transport necessarily incurred in connection with Sickness resulting in Inpatient hospitalization.

15.      Dental treatment and dental surgery necessary to restore or replace natural teeth lost or damaged as a result of an Injury covered under this policy.

16.      Medically Necessary rental of Durable Medical Equipment (limited to a standard basic hospital bed and/or a standard basic wheelchair) up to the purchase prices, not including expenses for customization and only for the portion of the cost equivalent to the Coverage Period.

17.      Physical Therapy if prescribed by a Doctor who is not affiliated with the Physical Therapy practice, necessarily incurred to continue recovery from a covered Injury or Sickness.

## Pre-Certification Requirements

1.      All hospitalizations, other Inpatient care, and Surgeries or Surgical Procedures must be Pre-certified.

2.      To comply with the Pre-certification requirements, the Covered Person must:

        A.      Contact the Company at the telephone number contained in the Insured's policy as soon as possible <u>before</u> the expense is to be incurred; and

        B.      Comply with the instructions of the Company and submit any information or documents they require; and

        C.      Notify all Doctors, Hospitals and other providers that this insurance contains Pre-certification requirements and ask them to fully cooperate with the Company.

3.      If the Covered Person complies with the Pre-certification requirements, and the expenses are Pre-certified, the Company will pay Eligible Medical Expenses subject to

all terms, conditions, provisions and exclusions described in this policy.  If the Covered Person does not comply with the Pre-certification requirements or if the expenses are not Pre-certified:

    A.    Eligible Medical Expenses will be reduced by 50%; and

    B.    The Deductible will be subtracted from the remaining amount; and

    C.    The Coinsurance will be applied.

4.    Emergency Pre-certification:  In the event of an emergency Hospital admission, Pre-certification must be made within 48 hours after the admission, or as soon as is reasonably possible.

5.    Pre-certification Does Not Guarantee Benefits – The fact that expenses are Pre-certified does not guarantee either payment of benefits or the amount of benefits.  Eligibility for and payment of benefits are subject to all the terms, conditions, provisions and exclusions herein.

6.    Concurrent Review – For Inpatient stays of any kind, the Company will Pre-certify a limited number of days of confinement.  Additional days of Inpatient confinement may later be Pre-certified if a Covered Person receives prior approval.

## PART VI – EXCLUSIONS

Charges for the following treatments and/or services and/or supplies and/or conditions are excluded from coverage:

1.    Pre-existing Conditions – Charges resulting directly or indirectly from a pre-existing condition are excluded from coverage hereunder.  A pre-existing condition is a condition: (1) for which medical advice, diagnosis, care, or treatment (includes receiving services and supplies, consultations, diagnostic tests or prescription medicines) was recommended or received within the 60 months immediately preceding the Effective Date; or (2) that had manifested itself in such a manner that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care, or treatment (includes receiving services and supplies, consultations, diagnostic tests or prescription medicines) within the 12 months immediately preceding such person's Effective Date. This exclusion does not apply to a newborn or newly adopted child who is added to coverage under this policy in accordance with PART II – ELIGIBILITY AND EFFECTIVE DATE OF INSURANCE.

2.    Waiting Period – If coverage was purchased within 3 days of the Covered Person's Effective Date, then in respect to Sickness, Covered Persons will only be entitled to receive benefits for Sicknesses that begin, by occurrence of symptoms and/or receipt of treatment, at least 72 hours following the Covered Person's Effective Date of coverage under this policy.

3.    Outpatient Prescription Drugs, medications, vitamins, and mineral or food supplements including pre-natal vitamins, or any over-the-counter medicines, whether or not ordered by a Doctor.

4.    Routine pre-natal care, Pregnancy, childbirth, and postnatal care.  (This exclusion does not apply to "Complications of Pregnancy" as defined.)

5.    Alcoholism.

6.    Substance abuse.

7.    Charges which are not incurred by a Covered Person during his/her Coverage Period.

8.    Treatment, services or supplies, which are not administered by or under the supervision of a Doctor.

9.    Treatment, services or supplies which are not Medically Necessary as defined.

10.    Treatment, services or supplies provided at no cost to the Covered Person.

11. Charges which exceed Usual and Customary charge as defined.
12. Telephone consultations or failure to keep a scheduled appointment.
13. Consultations and/or treatment provided over the Internet.
14. Surgeries, treatments, services or supplies which are deemed to be Experimental Treatment.
15. All charges incurred while confined primarily to receive Custodial or Convalescence Care.
16. Weight modification or surgical treatment of obesity, including wiring of the teeth and all forms of intestinal bypass surgery.
17. Modifications of the physical body in order to improve the psychological, mental or emotional well-being of the Covered Person, such as sex-change surgery.
18. Surgeries, treatments, services or supplies for cosmetic or aesthetic reasons, except for reconstructive surgery which is expressly covered under this policy.
19. Any drug, treatment or procedure that either promotes or prevents conception including but not limited to: artificial insemination, treatment for infertility or impotency, sterilization or reversal of sterilization.
20. Any drug, treatment or procedure that either promotes, enhances or corrects impotency or sexual dysfunction.
21. Abortions, except in connection with covered Complications of Pregnancy or if the life of the expectant mother would be at risk.
22. Dental treatment, except for dental treatment that is expressly covered under this policy.
23. Eyeglasses, contact lenses, hearing aids, hearing implants, eye refraction, visual therapy, and any examination or fitting related to these devices, and all vision and hearing tests and examinations.
24. Eye surgery, such as radial keratotomy, when the primary purpose is to correct nearsightedness, farsightedness or astigmatism.
25. Treatment for cataracts.
26. Treatment of the temporomandibular joint.
27. Injuries resulting from participation in any form of skydiving, scuba diving, auto racing, bungee jumping, hang or ultra light gliding, parasailing, sail planing, flying in an aircraft (other than as a passenger on a commercial airline), rodeo contests or as a result of participating in any professional, semi-professional or other non-recreational sports including boating, motorcycling, skiing, riding all-terrain vehicles or dirt-bikes, snowmobiling or go-carting.
28. Injuries or Sicknesses resulting from participation in interscholastic, intercollegiate or organized competitive sports.
29. Injury resulting from being under the influence of or due wholly or partly to the effects of alcohol or drugs, other than drugs taken in accordance with treatment prescribed by a Doctor, but not for the treatment of Substance Abuse.
30. Willfully self-inflicted Injury or Sickness.
31. Venereal disease, including all sexually transmitted diseases and conditions.
32. Immunizations and Routine Physical Exams.
33. Services received for any condition caused by a Covered Person's commission of or attempt to commit a felony or to which a contributing cause was the Covered Person being engaged in an illegal occupation.
34. Speech, vocational, occupational, biofeedback, acupuncture, recreational, sleep or music therapy, holistic care of any nature, massage and kinesitherapy.
35. Any services performed or supplies provided by a member of the Insured's Immediate Family.
36. Orthoptics and visual eye training.
37. Services or supplies which are not included as Eligible Expenses as described herein.

38. Care, treatment or supplies for the feet: orthopedic shoes, orthopedic prescription devices to be attached to or placed in shoes, treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia or bunions, and treatment of corns, calluses or toenails.

39. Care and treatment for hair loss including wigs, hair transplants or any drug that promises hair growth, whether or not prescribed by a Doctor.

40. Treatment of sleep disorders.

41. Hypnotherapy when used to treat conditions that are not recognized as Mental or Nervous Disorders by the American Psychiatric Association, and biofeedback, and non-medical self-care or self-help programs.

42. Any services or supplies in connection with cigarette smoking cessation.

43. Exercise programs, whether or not prescribed or recommended by a Doctor.

44. Treatment required as a result of complications or consequences of a treatment or condition not covered under this policy.

45. Charges for travel or accommodations, except as expressly provided for local ambulance.

46. Treatment incurred as a result of exposure to non-medical nuclear radiation and/or radioactive material(s).

47. Organ or Tissue Transplants or related services.

48. Treatment for acne, moles, skin tags, diseases of sebaceous glands, seborrhea, sebaceous cyst, unspecified disease of sebaceous glands, hypertrophic and atrophic conditions of skin, nevus.

49. Services received or supplies purchased outside the United States, its territories or possessions, or Canada.

50. Treatment for or related to any congenital condition, except as it relates to a newborn or adopted child added as a Covered Person to this policy.

51. Spinal manipulation or adjustment.

52. Sclerotherapy for veins of the extremities.

53. Expenses during the first 6 months after the Effective Date of coverage for a Covered Person for the following (subject to all other coverage provisions, including but not limited to the Pre-existing Condition exclusion):

    A. Total or partial hysterectomy, unless it is Medically Necessary due to a diagnosis of carcinoma;

    B. Tonsillectomy;

    C. Adenoidectomy;

    D. Repair of deviated nasal septum or any type of surgery involving the sinus;

    E. Myringotomy;

    F. Tympanotomy;

    G. Herniorraphy; or

    H. Cholecystectomy.

54. Chronic fatigue or pain disorders; Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or related immunodeficiency disorders.

55. Treatment or diagnosis of allergies, except for emergency treatment of allergic reactions.

56. Treatment, medication or hormones to stimulate growth, or treatment of learning disorders, disabilities, developmental delays or deficiencies, including therapy.

57. Kidney or end stage renal disease.

58. Joint replacement or other treatment of joints, spine, bones or connective tissue including tendons, ligaments and cartilage, unless related to a covered injury.

59. Expenses resulting from a declared or undeclared war, or from voluntary participation in a riot or insurrection.

60.     Expenses incurred by a Covered Person while on active duty in the armed forces. Upon written notice to Us of entry into such active duty, the unused premium will be returned to the Covered Person on a pro-rated basis.

## PART VII – COORDINATION OF BENEFITS (COB)

Some people have health care coverage through more than one medical insurance plan at the same time. COB allows these plans to work together so the total amount of all benefits will never be more than 100 percent of the allowable expenses during any coverage year. This helps to hold down the costs of health coverage.

COB does not apply to life insurance or accidental death and dismemberment benefits.

The term "plan" applies separately to each policy, contract agreement or other arrangements for benefits or services. The term "plan" also applies separately to that part of any policy, contract, agreement or other arrangements for benefits or services that coordinates its benefits with other plans and to that part that does not.

When a plan provides benefits in the form of services rather than cash payment the reasonable cash value of each service rendered will be considered to be both: (1) an allowable expense; and (2) a benefit paid.

**Definitions.** "Plan" – means any of the following which provides benefits or services for medical expenses:
1.      Individual or family insurance or subscriber contracts.
2.      Any group insurance or group-type coverage, whether insured or uninsured. This includes prepayment, group practice, or individual practice coverage.
3.      Any federal, state or local governmental programs, or coverage required or provided by law. This does not include a state plan under Medicaid (Title XIX, Grants to States for Medical Assistance Programs, of the United States Social Security Act, as amended from time to time.)

Each contract or other arrangement for coverage under the above paragraphs is a separate plan. Also, if an arrangement has two parts and COB rules apply to one of the two, each of the parts is construed to mean a separate Plan.

The term "plan" does not include:
1       Individual or family coverage through Health Maintenance Organizations (HMOs);
2.      Individual or family coverage under other prepayment, group practice and individual practice plans;
3.      School accident-type coverages. (These contracts cover students for accidents only, including athletic injuries, either on a twenty-four hour basis or on a to-and-from school basis);
4.      Group or group-type hospital indemnity benefits of $100 per day or less;
5.      Medicare Supplement policies;
6.      A state plan under Medicaid.

**"Primary Plan (Primary)"** – means the Plan which determines its benefits before those of the other Plan. When there are more than two (2) Plans, This Plan may be Primary as to one and Secondary as to another.

**"Secondary Plan (Secondary)"** – means the Plan which determines its benefits after those of the other Plan. When there are more than 2 Plans, This Plan may be Secondary as to one and Primary as to another.

**"This Plan"** – means the benefits provided under this policy.

**Effect on Benefits.** Plans use COB to decide which plan should pay first for a covered expense. If the Primary Plan's payment is less than the charge for the allowable expense, then the Secondary Plan will apply its benefit payment to the balance.

The following rules will be used to establish the order of benefit determination:

1. A plan which does not have a COB provision will always be the Primary Plan.
2. The benefits of a plan which covers the person on whose expenses the claim is based as other than a dependent will be determined before the benefits of a plan which covers the person as a dependent. However, if the person is also a Medicare beneficiary, and if the rule established under the Social Security Act of 1965, as amended, makes Medicare secondary to the plan covering the person as a dependent of an active employee, the order of benefit determination is:
   A. First, benefits of a plan covering persons as an employee, member, or subscriber.
   B. Second, benefits of a plan of an active worker covering persons as a dependent.
   C. Third, Medicare benefits.
3. The benefits of a plan that covers a person for whom a claim is made as a dependent child will be determined under the following rules:
   A. When the parents are married: the benefits of a plan which covers the child as a dependent of the parent whose birthday anniversary occurs earlier in the calendar year will be determined before the benefits of a plan which covers the child as a dependent of the parent whose birthday anniversary occurs later in the calendar year.
   B. If both parents have the same birthday the benefits of the plan that covered the parent longer are determined before those of the plan that covered the other parent for a shorter period of time.
   C. If the plans do not agree on the order of benefit rules because the other plan does not have the rule described in this section, but has a rule based upon the gender of the parent, the rule in the other plan will determine the order of benefits.
   D. When the parents are separated or divorced and the parent with custody has not remarried the benefits of a plan which covers the child as a dependent of the parent with custody of the child will be determined before the benefits of a plan which covers the child as a dependent of the parent without custody.
   E. When the parents are divorced and the parent who has custody of the child has remarried: (a) the benefits of a plan which covers the child as a dependent of the parent with custody will be determined before the benefits of a plan which covers the child as a dependent of the step-parent; and (b) the benefits of a plan that covers the child as a dependent of the step-parent will be determined before the benefits of a plan that covers the child as a dependent of the parent without custody.
   F. Despite (2) and (3) above, if there is a court decree which would otherwise establish financial responsibility for the medical, dental or other health care expenses with respect to the child, the benefit payment of a plan which covers the child as a dependent of the parent with such financial responsibility will be

determined before the benefit payment of any other plan that covers the child as a dependent child.

4. The benefits of a plan that covers a person as a primary insured who is neither laid off nor retired, or as that primary insured's dependent, are determined before those of a plan that covers that person as a laid off or retired primary insured or as that primary insured's dependent. This rule will not apply if the other plan does not have this rule and if, as a result, the plans do not agree on the order of benefits.

5. If a person whose coverage is provided under a right of continuation pursuant to federal or state law is covered under another plan, the following will be the order of benefit determination:

    A. First, the benefits of a plan covering the person as an employee, member, or subscriber (or as that person's dependent);

    B. Second, the benefits under the continuation coverage. If the other plan does not have the rule described above and if, as a result, the plans do not agree on the order of benefits, this rule is ignored.

6. When rules 2 through 5 do not establish an order of benefit determination the benefits of a plan which has covered the person on whose expenses the claim is based for the longer period of time will be determined before the benefits of a plan which has covered the person the shorter period of time.

**Facility of Payment.** If another plan makes a benefit payment that should have been made by us we have the right to pay the other plan any amount we deem necessary to satisfy our obligation under these COB rules.

**Right of Recovery.** If the amount of our benefit payment is more than the amount needed to satisfy our obligation under these COB rules, we have the right to recover the excess amount from: (A) any persons to or for whom, or with respect to whom, the payments were made; (B) any insurance companies; or (C) any other organizations.

**Right to Receive and Release Necessary Information.** In order to carry out these COB rules:

1. We have the right, without the consent of or notice to any person, to exchange information with any person, insurance company or organization, as we deem necessary; and

2. Any person claiming benefits under this plan must give us any information necessary to carry out this provision.

### PART VIII - CLAIM PROVISIONS

Notice of Claim: Written notice of claim must be given within 31 days after a covered loss begins (60 days in Kentucky; six months in Montana) or as soon as is reasonably possible. The notice must be given to the Company named on the Schedule of Benefits. Notice should include information that identifies the claimant and this policy.

Claim Forms: When the Company receives notice of claim, forms for filing proof of loss will be sent to the claimant. If claim forms are not supplied within 15 days, a claimant can give proof as follows:

1. In writing;
2. Setting forth the nature and extent of the loss; and
3. Within the time stated in the Proof of Loss provision.

(If the Insured resides in Georgia, the reference to 15 days is changed to 10 working days.)

Proof of Loss: Written proof of loss must be given to the Company named on the Schedule of Benefits within 90 days after the loss begins. We will not deny nor reduce any claim if it was not reasonably possible to give proof of loss in the time required. In any event, proof must be given to the Company within one year after it is due unless the Insured is legally incapable of doing so.

Time of Payment of Claim: Benefits for loss covered by this policy will be paid as soon as we receive proper written proof of such loss.

Payment of Claims: All benefits will be paid to the Insured, if living, unless an Assignment of Benefits has been requested by the Insured. Any other benefits due and unpaid at the Insured's death will be paid to the Insured's estate. If a benefit is to be paid to the Insured's estate, or to an Insured or beneficiary who is not competent to give a valid release, the Company may pay up to $1,000.00 of such benefit to one of the Insured's relatives who is deemed by the Company to be justly entitled to it. Such payment, made in good faith, fully discharges the Company to the extent of the payment.

Physical Examination: At our expense, we may have a person claiming benefits examined as often as reasonably necessary while the claim is pending.

Legal Action: No legal action may be brought to recover on this policy before 60 days after written proof of loss has been furnished as required by this policy. No such action may be brought after three years (five years in Kansas, six years in South Carolina and the applicable statute of limitation in Florida) from the time written proof of loss is required to be furnished.

Third Party Liability: No benefits are payable for any Sickness, Injury, or other condition for which a third party may be liable or legally responsible by reason of negligence, an intentional act, or breach of any legal obligation on the part of such third party. Nevertheless, the Company will advance the benefits of this policy to the Insured subject to the following:

1.  The Insured agrees to advise Us, in writing, within 60 days of any Covered Person's claim against the third party and to take such action, provide such information and assistance, and execute such paper as We may require to facilitate enforcement of the claim. The Insured and Covered Person also agree to take no action that may prejudice Our rights or interests under this policy. Failure to provide notice of a claim or to cooperate with Us, or actions that prejudice Our rights or interests, will be material breach of this policy and will result in the Insured being personally responsible for reimbursing Us.

2.  We will automatically have a lien, to the extent of benefits advanced, upon any recovery that any Covered Person receives from the third party, the third party's insurer, or the third party's guarantor. Recovery may be by settlement, judgment or otherwise. The lien will be in the amount of benefits paid by Us under this policy for the treatment of the Sickness, disease, Injury or condition for which the third party is liable.

## PART IX – GENERAL PROVISIONS

<u>Time Limit on Certain Defenses</u>:  The validity of coverage issued under this policy with respect to an Insured or his Eligible Dependents may not be contested after two years from this policy's effective date, except for nonpayment of premiums.

<u>Misstatement of Age</u>:  If the age of any Covered Person is incorrectly stated, we will make a fair adjustment of the premiums, benefits or both.  The adjustment will be based on the premiums and benefits that would have been payable had we known the correct information.

<u>Not in Lieu of Workers' Compensation</u>:  This policy is not in lieu of and does not affect requirements for coverage under Workers' Compensation laws.

<u>Pronouns</u>:  Whenever a personal pronoun in the masculine gender is used, it will be deemed to include the feminine also, unless the context clearly indicates to the contrary.

<u>Entire Contract</u>:  This policy, riders, endorsements and the Policyholder's application, a copy of which is attached hereto, shall constitute the entire contract between the parties. All statements made by the policyholder and any other Covered Persons shall be deemed representations and not warranties.  No such statement, in the absence of fraud, shall be used in any contest under this policy unless it is contained in a written instrument and a copy of the instrument is or has been furnished to the person or his beneficiary, if any.

<u>Authority, Amendment and Alteration</u>:  None of the terms of this policy may be modified, except by an agreement in writing signed by the President, a Vice President or the Secretary of the Company. The authority for this purpose cannot be delegated. This policy may be amended or changed at any time, subject to the laws of the jurisdiction in which it is delivered. No agent or person, other than as stated above, shall have the authority to change this policy or otherwise waive any requirements or provisions of this policy. No change in this policy shall be valid unless evidenced by endorsement on this policy or by an amendment to this policy signed by Us.

<u>Non-Renewability of Insurance</u>:  Insurance for an Insured and his Eligible Dependents, if any, does not renew and shall terminate at the end of the Coverage Period selected by the Insured and approved by Us, unless earlier terminated as provided in this policy.

<u>Conformity with Law</u>:  If any provision of this policy is contrary to any law to which it is subject, this provision is hereby amended to conform thereto.

<u>Change of Beneficiary</u>:  The right to change of beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

## PART X – SCHEDULE OF BENEFITS

**INSURED INFORMATION:**

Name:          Allison Alt

Policy Effective Date:      4/1/2016

**COVERAGE PERIOD:**      6 Months

**ELIGIBILE DEPENDENTS COVERED**

**COVERAGE AND BENEFIT AMOUNTS:**

| | |
|---|---|
| Deductible | $2,500 per Covered Person per Coverage Period. Maximum of 3 Deductibles per family per Coverage Period.<br><br>An additional Deductible of $250 per visit will be applied to charges for use of emergency room in the event of Sickness unless the Covered Person is directly admitted as an Inpatient for further treatment. |
| Coinsurance | During a Coverage Period, the Company will pay 80% of the next $5,000 of Eligible Expenses after the Deductible, then 100% of Eligible Expenses to the Overall Maximum Limit. |
| Urgent Care Center | For each visit, the Covered Person shall be responsible for a $50 co-payment, after which Coinsurance will apply. Not subject to Deductible |
| Hospital Room and Board | Average Semi-private room rate, including nursing services. |
| Local Ambulance | Injury: Usual and Customary charges to a Maximum of $250 per trip, when related to a covered Injury.<br>Sickness: Usual and Customary charges to a maximum of $250 per trip, when covered Sickness results in hospitalization as Inpatient |
| Intensive Care Unit | Usual and Customary charges |
| Physical Therapy | $50 Maximum per visit per day |
| Mental and Nervous Disorders | Outpatient Treatment: $50 Maximum per visit, Maximum 10 visits per Coverage Period<br>Inpatient Treatment: $100 Maximum per |

| | day, Maximum 31 days per Coverage Period |
|---|---|
| Home Health Care | Maximum 1 visit per day.  Maximum of 40 visits during a Coverage Period |
| Extended Care Facility | Not to exceed a daily rate of $150 nor a maximum of 60 days |
| All Other Eligible Medical Expenses | Usual and Customary charges |
| Penalty for Failure to Pre-certify | 50% of Eligible Medical Expenses |
| Overall Maximum Limit per Coverage Period | $2,000,000 |

# HCC Life Insurance Company
## Short Term Medical Insurance Application
### For use in AL, DE, DC, MS and PA

**Please submit completed enrollment forms with payment to:**

HCC Life Insurance Company
251 N. Illinois Street, Suite 600
Indianapolis, IN 46204

- Please complete this enrollment form entirely. Failure to provide complete information may delay processing.
- You may elect the $5,000 and $7,500 deductible options by applying online or contacting us.

**Personal Details**  Please provide the following details for all individuals to be covered

| Name (First and Last) | Date of Birth | Gender | Contact Information | | |
|---|---|---|---|---|---|
| Primary  *Allison Alt* | | ☐ Male  ☒ Female | Address  *146 U Street NW* | | |
| Spouse | | ☐ Male  ☐ Female | City  *Washington* | State  *DC* | Zip  *20001* |
| Child 1 | | ☐ Male  ☐ Female | Phone Number  *(352) 359-1108* | | |
| Child 2 | | ☐ Male  ☐ Female | E-mail Address  *allisonclairealt@gmail.com* | | |

**Plan Options**  Please check the boxes corresponding to your elections for a policy period deductible and coinsurance

**Payment Option**

☒ Monthly – 6 month plan

☐ Monthly – 11 month plan

☐ Single Payment (please specify end date)

Specify End Date _____

Number of days _____

Deductible  ☐ $250  ☐ $500  ☐ $1,000  ☒ $2,500  ☐

Coinsurance  ☒ 80% of $5,000  ☐ 50% of $5,000

Requested Effective Date  *4 / 1 / 2016*

**Eligibility Questions**  Please answer the questions below as they apply to all family members applying for coverage.

1. Will any applicant have other health insurance in force on the policy effective date or be eligible for Medicaid? — ☐ Yes  ☒ No

2. Are you or any applicant:
   a. Now pregnant, an expectant father, in process of adoption, or undergoing infertility treatment?
   b. Over 300 pounds if male or over 250 pounds if female? — ☐ Yes  ☒ No

3. Within the last 5 years has any applicant been diagnosed, treated, or taken medication for or experienced signs or symptoms of any of the following: cancer or tumor, stroke, heart disease including heart attack, chest pain or had heart surgery, COPD (chronic obstructive pulmonary disease) or emphysema, Crohn's disease, liver disorder, degenerative disc disease or herniation/bulge, rheumatoid arthritis, kidney disorder, diabetes, degenerative joint disease of the knee, alcohol abuse or chemical dependency, or any neurological disorder? — ☐ Yes  ☒ No

4. Within the last 5 years has any applicant been diagnosed or treated by a physician or medical practitioner for Acquired Immune Deficiency Syndrome (AIDS) or tested positive for Human Immunodeficiency Virus (HIV)? Residents of WI do not need to disclose HIV test results. — ☐ Yes  ☒ No

5. If you are not a US Citizen, do you expect to legally reside in the US for the duration of the policy? — ☐ Yes  ☐ No  ☒ US citizen

**If you have answered "Yes" to questions 1 through 4 or "No" to question 5 above, coverage cannot be issued.
Thank you for your interest.**

**For product information or assistance with this enrollment form, please contact:**

eHealthinsurance Services, Inc.
800-977-8860
Supervisor@ehealthinsurance.com

| Rate Calculation | Use the rate table corresponding to your choice of plan option and coinsurance level to complete applicant rates below then follow the calculation instructions | Monthly Payments | Single Up-front Payment |
|---|---|---|---|
| A | Applicant's Rate | A  67.18 | A |
| B | Spouse's Rate | B  0 | B |
| C | Per child 0 ___ x # 0 ___ = | C  0 | C |
| D | A + B + C = | D  67.18 | D |
| E | Zip Code Factor | E  0.8070 | E |
| F | D x E = Monthly / Daily Premium Total (round to the nearest penny) | F  $54.21 | F |
| G | Number of Months to be Covered | n/a | G |
| H | F x G = | n/a | H |
| I | Administrative Fee* *Fee is $5 on each monthly payment after the first payment. | I  $5.00 | I |
| J | Total Due  Monthly: F + I = Daily: H + I = | J  $59.21 | |

**Payment Information**
Please provide complete payment information. Enrollment forms without payment cannot be processed.

☐ Check/Money Order (Single Up-Front Payment Only)
☐ MasterCard   ☒ VISA
☐ Discover   ☐ American Express

Credit Card Number | Exp Date
xxxxxxxxxxx▮ | 6/2017

Name on Card
Allison C Alt

Phone #  (352)359-1108

Billing Address (including city, state and zip)
146 U Street NW
Washington, DC  20001

Check or Money Orders should be made payable, in US dollars, to HCC Life Insurance Company. If paying by credit card, I authorize HCC Life to debit my Discover, VISA, MasterCard or American Express account for the amount specified in the Rate Calculation section. If I have selected a monthly plan, I hereby request and authorize HCC Life to debit my Credit Card account for the proper installment amounts on the due dates of the installments. This authorization will remain in effect for the duration of the Coverage Period elected or until revoked by me in writing. Coverage purchased by credit card is subject to validation and acceptance by the credit card company.

Cardholder Signature | Date
Signed Electronically | 3/20/2016

**Authorization**

I hereby request coverage under a policy underwritten by HCC Life Insurance Company. I understand this insurance contains a Pre-existing Condition exclusion, a Pre-certification Penalty and other restrictions and exclusions. I agree that coverage will not become effective for me or any dependent whose medical status, prior to the effective date, has changed and therefore results in a "yes" answer to any of the medical questions on this application. If my medical status changes in this way, coverage will be declined for all individuals included on this application. I understand that if I have elected the Monthly Payment option, my credit card will be charged each month on the due date of the premium for 6 or 11 months, depending on the plan I have selected. I understand that I may terminate the scheduled payments by notifying HCC Life in writing at least one business day prior to the next scheduled payment date. I understand that this coverage is not renewable or extendable. I understand that the information contained herein is a summary of the coverage offered in the policy and that I may obtain a complete copy of the policy upon request to HCC Life. I understand that HCC Life, as underwriter of the plan, is solely liable for the coverage and benefits provided under the insurance. I understand and agree that the insurance agent/broker, if any, assisting with this application is a representative of the applicant. If signed by a representative of the applicant, the undersigned represents his/her capacity to so act. If signed as guardian or proxy of the applicant, the undersigned represents his/her capacity to so act. By acceptance of coverage and/or submission of a claim for benefits, the applicant ratifies the authority of the signer to so act and bind the applicant. Fraud Warning: Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person submits an insurance application or statement of claim containing any materially false, incomplete or misleading information is committing a crime and may be subject to civil or criminal penalties.

| Applicant Signature | Date | Spouse Signature | Date |
|---|---|---|---|
| Signed Electronically | 3/20/2016 | | |

| Signed by HCC Life Appointed Agent: | Plan Administrator Use Only: | |
|---|---|---|
| | PBC 612.110.04.12 | Code: 23723 |

**WARNING.** Any person who knowingly: **Arizona and Arkansas:** presents a false or fraudulent claim for payment of a loss or benefit is subject to criminal and civil penalties, or specific to AR: presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. **Louisiana, New Mexico and Texas:** presents a false or fraudulent claim for the payment of a loss or benefit (or specific to LA and TX: who knowingly presents false information on an application for insurance) is guilty of a crime and may be subject to fines and confinement in state prison, (or specific to NM: to civil fines and criminal penalties.) **Florida:** and with intent to injure, defraud, or deceive any insurance company files a statement of claim containing false, incomplete, or misleading information is guilty of a felony of the third degree. **Kentucky and Pennsylvania:** and with intent to defraud any insurance company or other person files an application for insurance, files a statement of claim, containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, specific to PA: subjects such person to criminal and civil penalties. **Ohio:** with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. **Oklahoma:** and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.
**WARNING: District of Columbia, Tennessee and Virginia :** It is a crime to knowingly provide false, incomplete or misleading information to an insurer or insurance company for the purpose of defrauding the insurer or insurance company, (or specific to DC: any other person.) Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

HCCL STMM APP1

# NOTICE OF PRIVACY PRACTICES

THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION.

PLEASE REVIEW IT CAREFULLY. THE PRIVACY OF YOUR MEDICAL INFORMATION IS IMPORTANT TO US.

## Our Privacy Promise

We will keep your medical information private. We will also give you this notice about our privacy practices, our legal duties and your rights concerning your medical information. We will follow the privacy practices that we describe in this notice while it is in effect. This notice took effect April 14, 2003, and will remain in effect until it is changed or replaced.

We reserve the right to change our privacy practices and the terms of this notice at any time, as long as the law allows. We reserve the right to make these changes effective for all medical information that we keep, including medical information we created or received before we made the changes. Before we make a significant change in our privacy practices, we will change this notice accordingly and send the new notice to you prior to the effective date of the change.

You may request a copy of this notice at any time or view a copy on our Web site at www.hcclife.com.

## Uses and Disclosures of Medical Information

### Treatment, Payment, Health Care Operations

We may use and disclose your medical information for purposes of treatment, payment and health care operations. For example:

Treatment: We may disclose your medical information to a physician or other health care professional so they can treat you.

Payment: We may use and/or disclose your medical information for these and other related activities:
- To pay claims from physicians, hospitals and other health care professionals for covered services you received.
- To determine your eligibility for benefits.
- To coordinate those benefits.
- To determine medical necessity.
- To obtain premiums.
- To issue explanations of benefits to the named insured.

We may also disclose your medical information to a health care professional or entity that is bound by the federal Privacy Rules so they can obtain payment or engage in payment activities.

Health Care Operations: We may use and/or disclose your medical information in the normal course of our health care operations. This includes:

- Determining our risk and premiums for your health plan.
- Quality assessment and improvement activities.
- Reviewing the qualifications of health care professionals; evaluating practitioner and provider performance; conducting training programs; and accreditation, certification, licensing and credentialing activities.
- Medical review, legal services and auditing, including fraud and abuse detection and compliance programs.
- Business planning and development.
- Business management and general administrative activities, including management activities relating to privacy, customer service, internal grievances and creating de-identified information or a limited data set.

We may disclose your medical information to another entity, which has a relationship with you and is also bound by the federal Privacy Rules, for its health care operations relating to quality assessment and improvement activities, reviewing the competence or qualifications of health care professionals, or detecting or preventing health care fraud and abuse.

### Your Authorization

You may give us written authorization to use your medical information or to disclose it to anyone for any purpose. You may revoke your authorization in writing at any time. However, this will not affect any uses and disclosures we made while your authorization was in effect. Without your written authorization, we will not use or disclose your medical information for any reason except those described in this notice.

### Your Family and Friends

We may disclose your medical information to a family member, friend or other person to the extent necessary for them to assist with your health care, or with payment for your health care. We may also use or disclose your medical information to notify (or help notify, including identifying and locating) a family member, a personal representative or other person responsible for your care of your location, general condition or death.

Before we disclose your medical information to that person, we will give you a chance to object to us doing so. If you are not available, or if you are incapacitated or in an emergency situation, we will disclose your medical information based on our professional judgment of what would be in your best interest.

### Your Employer or Organization Sponsoring Your Group Health Plan

We may disclose summary information about you to your employer or plan sponsor for two reasons. One is to get premium bids for the health insurance coverage offered

through your group health plan. The second is to decide whether to modify, amend or terminate your group health plan. The summary information we may disclose summarizes claims history, claims expenses or types of claims members of your group health plan have filed. The summary information will not include demographic information about the people in the group health plan, but your employer or plan sponsor may be able to identify you or others from the summary information.

## Underwriting

We may receive your medical information for underwriting, premium rating or other activities necessary to create, renew or replace a contract of health insurance or health benefits. We will not use or further disclose this medical information for any other purpose (except as required by law) unless the contract of health insurance or health benefits is placed with us, in which case we will use and disclose your medical information as described in this notice.

## Disaster Relief

We may use or disclose your medical information to a public or private entity authorized by law or by its charter to assist in disaster relief efforts.

## Public Benefit

We may use or disclose your medical information as authorized by law for the following purposes that are in the public interest or benefit:

- As required by law.
- For public health activities, including disease and vital statistics reporting, child abuse reporting, FDA oversight, and to employers regarding work-related illness or injury.
- To report adult abuse, neglect or domestic violence.
- To health oversight agencies.
- In response to court and administrative orders and other lawful processes.
- To law enforcement officials in response to subpoenas and other lawful processes concerning crime victims, suspicious deaths, crimes on our premises, reporting crimes in emergencies and to identify or locate a suspect or other person.
- To coroners, medical examiners and funeral directors.
- To organ procurement organizations.
- To avert a serious threat to health or safety.
- In connection with certain research activities.
- To the military and to federal officials for lawful intelligence, counterintelligence and national security activities.
- To correctional institutions regarding inmates.
- As authorized by state workers' compensation laws.

## Health-Related Services

We may use your medical information to contact you about health-related benefits and services, or about treatment alternatives. We may disclose your medical information to a business associate to assist us in these activities.

## Marketing

We may use or disclose your medical information to encourage you to purchase or use a product or service by face-to-face communication, or to provide you with promotional gifts of nominal value.

## Individual Rights

## Access

You have the right to inspect or get copies of your medical information, with some exceptions. You may request that we provide copies in a format other than photocopies. We will use the format you request unless it is not practical to do so. To get your medical information, you must make a request in writing. If you request copies, we will charge you $0.50 for each page and for staff time to copy your medical information. We also will charge for postage if you want us to mail the copies to you. If you request another format, we will charge a cost-based fee for providing your medical information in that format. Contact us using the information listed at the end of this notice for a full explanation of our fees.

## Disclosure Accounting

You have the right to request, in writing, to receive a list of instances in which we (or our business associates) disclosed your medical information for purposes other than treatment, payment and health care operations, or as authorized by you, or for certain other activities allowed by law, on or after April 14, 2003. We will provide you with the date on which we made each disclosure, the name of the person or entity to which we disclosed your medical information, a description of the medical information we disclosed and the reason for the disclosure. If you request this accounting more than once in a 12-month period, we may charge you a reasonable, cost-based fee for each additional request. Contact us using the information listed at the end of this notice for a full explanation of our fees.

## Restriction

You have the right to request, in writing, that we place additional restrictions on our use or disclosure of your medical information. We are not required to agree to these additional restrictions, but if we do, we will abide by our agreement (except in an emergency). Any agreement to additional restrictions must be in writing signed by a person authorized to make such an agreement for us. We will not be bound unless our agreement is in writing.

**Confidential Communications**
You have the right to request, in writing, that we communicate with you about your medical information by other means, or to other locations. You must state that you could be in danger if we do not communicate to you in confidence. We must accommodate your request if it is reasonable, if it specifies the other means or location, and if it permits us to continue to collect premiums and pay claims under your health plan. This includes sending explanations of benefits to the named insured of your health plan. We will not be bound to your confidential communications request unless our agreement is in writing.

Even though you requested that we communicate with you about your health care in confidence, an explanation of benefits issued to the named insured for health care that the named insured (or others covered by the health plan) received might contain sufficient information, such as deductible and out-of-pocket amounts, to reveal that you obtained health care for which we paid.

**Amendment**
You have the right to request, in writing, that we amend your medical information. Your request must explain why we should amend the information. We may deny your request if we did not create the information you want amended and the person or entity that did create it is available, or we may deny your request for certain other reasons. If we deny your request, we will send you a written explanation.

You may respond with a statement of disagreement that we will add to the information you wanted to amend. If we accept your request to amend the information, we will make reasonable efforts to inform others of the amendment, including people you name, and to include the changes in any future disclosures of that information.

**Electronic Notice**
If you are viewing this notice on our Web site or by electronic mail (e-mail), you may request this notice in written form by using the information listed at the end of this notice.

**Questions and Complaints**

If you want more information about our privacy practices, or if you have questions or concerns, please contact us using the information below.

If you think that we may have violated your privacy rights, or you disagree with a decision we made about your privacy rights, you may tell us using the contact information listed below. You also may submit a written complaint to the U.S. Department of Health and Human Services. We will provide you with that address upon request.

We support your right to the privacy of your medical information. We will not retaliate in any way if you choose to file a complaint with us or with the U.S. Department of Health and Human Services.

**Contact Information**
HCC Life
Bradley T. Long, Privacy Officer
225 TownPark Drive, Suite 350
Kennesaw, GA 30144

(800) 447-0460 (telephone)
(770) 973-9854 (fax)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Allison Alt

Case Number: 2017 CA 004196 B

vs

Date: _____

HCC Life Insurance Company

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Zach Miller | Relationship to Lawsuit |
| Firm Name: McClanahan Powers PLLC | ☒ Attorney for Plaintiff |
| Telephone No.: 703-520-1326   Six digit Unified Bar No.: 1023148 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☒ 6 Person Jury   ☐ 12 Person Jury

Demand: $ 85,000 + cost & fees   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

---

NATURE OF SUIT:   *(Check One Box Only)*

## A. CONTRACTS

COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE   IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

6/14/17
_____
Date



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

_Allison Alt_
_____
Plaintiff

vs.

Case Number  **2017 CA 004196 B**

_HCC Life Insurance Company_
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Zach Miller_
_____
Name of Plaintiff's Attorney

_McClanahan Powers, PLLC_          By _____
Address                                                      Deputy Clerk
_8133 Leesburg Pike, Suite 130, Vienna, VA 22182_

_703-520-1326_                          Date  **06/19/2017**
Telephone

如果您需要翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오.        የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ALLISON ALT

Vs.                                                    C.A. No.        2017 CA 004196 B

HCC LIFE INSURANCE COMPANY

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JOHN M CAMPBELL
Date:  June 19, 2017
Initial Conference: 9:30 am, Friday, September 15, 2017
Location:   Courtroom 519
                500 Indiana Avenue N.W.
                WASHINGTON, DC 20001



EXHIBIT

tabbies®

B

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Caio.doc